# EXH. A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------x

MONER SALEH,

                    Plaintiff,

      v.

DIGITAL REALTY TRUST, INC. and PAUL BAMRICK, in his individual and professional capacity,

                    Defendants.

------------------------------------------------------------------------x

**SUMMONS**

Index No.:_____

Date Purchased:_____

**TO THE ABOVE NAMED DEFENDANTS:**

    **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer on MONER SALEH's attorney at the address set forth below within 20 days after the service of this summons and complaint, exclusive of the day of service, or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York.

    **YOU ARE HEREBY NOTIFIED THAT** in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

    **VENUE:**

    Pursuant to Section 509 of the CPLR, Plaintiff designates New York County as the place of trial. See C.P.L.R. § 509. In addition, pursuant to Section 503 of the CPLR, venue in this county is proper as all Defendants have business operations in New York County and Defendant Digital Realty Trust, Inc.'s New York operations are located in New York County at 32 Avenue

of the Americas, New York, NY 10013; 60 Hudson Street, New York, NY 10013; and 111 8th

Avenue, New York, NY 10011. See C.P.L.R. § 503.

Dated:   October 4, 2021
         New York, New York

                              Respectfully submitted,

                              **EISNER, DICTOR & LAMADRID, P.C.**

By: _____

                              Maria L. Chickedantz, Of Counsel
                              39 Broadway, Suite 1540
                              New York, NY 10006
                              Tel. (212) 473-8700
                              Fax: (212) 473-8705
                              maria@eisnerdictor.com

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------x

MONER SALEH,

                    Plaintiff,

      v.

DIGITAL REALTY TRUST, INC. and PAUL
BAMRICK, in his individual and professional
capacity,

                    Defendants.

------------------------------------------------------------------------x

**COMPLAINT**

Index No.:_____

**Jury Trial Requested**

Plaintiff MONER SALEH ("Plaintiff"), by and through his attorneys, Eisner Dictor and Lamadrid P.C., and for his Complaint against Defendants DIGITAL REALTY TRUST, INC. ("DLR" or "the Company") and PAUL BAMRICK (collectively, "Defendants"), alleges as follows:

## NATURE OF ACTION

1. Plaintiff brings this action seeking relief against Defendants for race, ethnicity, and national origin discrimination and retaliation, in violation of the New York State Human Rights Law, N.Y. Executive Law §§ 290, *et seq*. ("NYSHRL") and the New York City Human Rights Law, New York City Administrative Code §§ 8-101, *et seq*. ("NYCHRL").

2. The claims at issue in this matter involve Defendants' discriminatory mistreatment of Plaintiff on account of his race, ethnicity and national origin.

3. Plaintiff, disheartened and demoralized by the disparate treatment he was experiencing, complained to Defendants about the discriminatory treatment.

4. In a blatant and egregious act of retaliation, and notwithstanding Plaintiff's twenty (20) years of excellence working for Defendants, Defendants summarily terminated Plaintiff from his employment for his complaints of discrimination.

5. Plaintiff seeks to remedy the harm that he suffered and continues to suffer as a direct and proximate consequence of the discrimination he suffered and his subsequent unlawful termination from his employment with Defendants.

6. Plaintiff seeks declaratory relief, monetary damages, and punitive damages for Defendants' violations of the NYSHRL and the NYCHRL, as well as all other remedies available to him.

## JURISDICTION AND VENUE

7. Jurisdiction is proper pursuant to CPLR § 302(a), as the events that give rise to Plaintiff's claims occurred within the State of New York.

8. Jurisdiction is also proper as all Defendants' have operations within the State of New York, and regularly "transact business" within the State of New York within the meaning of CPLR § 302(a)(1).

9. Plaintiff's discrimination claims arise under the NYSHRL, N.Y. Executive Law §§ 290, *et seq.*, and the NYCHRL, Administrative Code of New York §§ 8-101, *et seq.*.

10. Venue is proper in New York County as the events giving rise to Plaintiff's claims occurred within the County of New York and the Defendants have business operations within this County within the meaning of CPLR § 503.

11. Venue is also proper as Plaintiff designates New York County as the place of trial pursuant to CPLR § 509.

2

12. Following the commencement of this action, a copy of this Complaint will be served on the New York City Commission on Human Rights, thereby satisfying the notice requirement of § 8-502 of the New York City Administrative Code.

## PARTIES

13. Plaintiff is an adult individual who resides in Kings County, New York.

14. Plaintiff was employed by Defendants between 1999 and 2019.

15. Plaintiff is a dark-skinned person of Arab ancestry and Palestinian ethnicity.

16. Defendant DLR is a data center company and real estate investment trust that invests in carrier-neutral data centers and provides colocation and peering services.

17. Defendant DLR is a corporation that is headquartered in San Francisco, CA, with operations in the City of New York at: 32 Avenue of the Americas, New York, New York 10013; 60 Hudson Street, New York, New York 10013; and 111 8th Avenue, New York, New York 10011.

18. Defendant Paul Bamrick was, at all relevant times, Regional Operations Manager for DLR, and Plaintiff's employer.

19. At all times relevant, Defendant Bamrick made personnel decisions on behalf of Defendant DLR, including decisions involving Plaintiff, such as decisions related to hiring, demotions, promotions, and terminations.

## FACTUAL ALLEGATIONS

20. Plaintiff was hired to work as a Customer Service Representative for Telx Group ("Telx") in 1999, where he was paid $10 per hour.

21. In recognition of his dedication and excellent performance, Plaintiff would be continuously promoted over the next 18 years.

3

22. In 2000, Plaintiff was promoted to Technician and briefly stayed in that title from 2000 through 2001.

23. After receiving another promotion, Plaintiff became a Facility Maintenance Technician from 2001 through 2003.

24. Plaintiff was then promoted to a supervisory role as Maintenance Supervisor which he maintained for six (6) years, from 2003 through 2009.

25. Plaintiff's rise to the top continued when he was promoted to Data Center Operations Manager and maintained the duties and responsibilities in that title for the next eight (8) years, from 2009 through 2017, earning approximately $86,000 per year.

26. Meanwhile, in or about 2015, DLR purchased Telx in one of the largest acquisitions in the industry.

27. Thereafter, in 2017, Defendant DLR's acquisition of Telx was finalized and Plaintiff became an employee of DLR.

28. In 2017, as part of DLR's acquisition of Telx, Defendant Bamrick became Plaintiff's employer.

29. Immediately thereafter, at the hands of Defendant Bamrick, a campaign of discriminatory conduct began against Plaintiff that included his demotion, racial segregation, failure to promote, and finally the unlawful termination of Plaintiff from his employment.

**DLR Demotes Plaintiff**

30. On or around April 2017, when Telx was acquired by Defendant DLR, Plaintiff's direct supervisor Erik Falk assured him and others that they would remain in the same title as employees for their new employer, Defendant DLR.

4

31. Relying on Mr. Falk's assurance, Plaintiff attempted to order new business cards a few days later.

32. In response to his attempt to order business cards, Mr. Falk called Plaintiff into his office and informed him that his new supervisor Defendant Bamrick had decided to demote Plaintiff from Data Center Operations Manager to Senior Operations Engineer.

33. Defendants provided no explanation for Plaintiff's sudden demotion.

34. Mr. Falk also informed Plaintiff that Defendant Bamrick had decided to give the now open position of Data Center Operations Manager to Kevin Groen, a lesser-qualified White facility engineer.

### DLR Racially Segregates Employees, Including Plaintiff

35. Approximately one month after Defendants decided to demote Plaintiff without any explanation, Defendant Bamrick advised Plaintiff and all other non-managerial employees, all of whom were also dark skinned and all of whom had been demoted without explanation, that they were no longer allowed to occupy any offices.

36. Accordingly, Plaintiff and his similarly situated dark-skinned colleagues were required to collect their belongings from their respective offices and sit together, in shame, at a large communal table, outside of the separated DLR cubicles.

37. The communal table had no phones or LAN connection, and therefore all who were required to use the communal table were unable to adequately perform their work responsibilities.

### DLR Fails to Promote Plaintiff

38. Plaintiff's White replacement to the role of Data Center Operations Manager quit in the summer of 2018.

5

39. In October 2018, unbeknownst to Plaintiff—and rather than allowing Plaintiff to return to his former position as Data Center Operations Manager, and rather than providing Plaintiff with the opportunity to reapply to his former position—Defendant Bamrickadvertised the job opening externally and hired a new White employee named Erik Greiner.

40. Mr. Greiner was entirely new to the company, having no prior history working for DLR, and did not have the same level of work experience as Plaintiff.

41. Nevertheless, Mr. Greiner became the Data Center Operations Manager and Plaintiff's direct supervisor.

42. In November 2018, Defendant Bamrick repeated the discriminatory conduct by externally recruiting and hiring Steve Robbins, a White engineer, to the role of Data Center Supervisor.

43. Instead of announcing the job opening internally, which would have allowed DLR employees with an interest in the job opportunity to apply, DLR quietly recruited for the position outside of DLR without advising DLR employees of the open position.

44. As a consequence, Plaintiff and two other qualified non-White employees Brian Baldwin and Ricardo Clark were deprived of the chance at the promotion.

45. Despite Plaintiff's, Mr. Baldwin's, and Mr. Clark's repeated attempts to acquire information about the promotion opportunity, DLR did not respond to them or otherwise provide them with information on how to apply to the position of Data Center Supervisor.

46. Plaintiff was more than qualified for the position of Data Center Supervisor at the time that he was passed over for the opportunity.

6

**DLR's Retaliatory Termination of Plaintiff**

47. In December 2018, a month after Plaintiff and his similarly situated dark-skinned colleagues were deprived of the opportunity to apply to the position of Data Center Supervisor, Plaintiff learned that he had been passed over and complained to his direct supervisor, Mr. Greiner.

48. To Mr. Greiner, Plaintiff highlighted DLR's pattern of discriminatory conduct in its hiring and promoting practices, pointing to instances where less-qualified White individuals were awarded jobs instead of more qualified dark-skinned DLR employees.

49. After Mr. Greiner relayed Plaintiff's complaint to Defendant Bamrick, Mr. Bamrick stated that Plaintiff "is a thorn in my ass."

50. A month after Plaintiff made his complaint to Mr. Greiner and Defendant Bamrick stated his annoyance with Plaintiff, Plaintiff was abruptly terminated from his employment.

51. On January 14, 2019, at a meeting held by Defendant Bamrick and DLR's head of Human Resources Mr. Gourley, Plaintiff was told that he was fired.

52. Of significance, Mr. Falk and Mr. Greiner both opposed Defendants' decision to unlawfully terminate Plaintiff, and in a writing to Plaintiff, Mr. Falk stated that Defendants' decision to terminate him was unlawful and that he should seek legal counsel.

53. Moreover, to Lead Engineer Leith Hunt, Mr. Greiner stated that Plaintiff and Mr. Clark (who was also terminated) "got screwed by Paul [Bamrick]" because Defendants unlawfully terminated them.

**FIRST CAUSE OF ACTION**
**Discrimination in Violation of the NYSHRL**
*Against All Defendants*

7

54. Plaintiff repeats each and every allegation in the preceding paragraphs as if set forth fully herein.

55. Defendants have discriminated against Plaintiff on the basis of his skin color, ethnicity and race in violation of the NYSHRL by subjecting Plaintiff to disparate treatment on the basis of his color, race and ethnicity, including, *inter alia*, subjecting him to a hostile work environment, demoting him, and failing to promote him.

56. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which he is entitled to an award of monetary damages and other relief.

57. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress for which he is entitled to an award of monetary damages and other relief.

58. Defendants' unlawful discriminatory conduct was intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights under the NYSHRL for which he is entitled to an award of punitive damages.

### SECOND CAUSE OF ACTION
**Retaliation in Violation of the NYSHRL**
*Against All Defendants*

59. Plaintiff repeats each and every allegation in the preceding paragraphs as if set forth fully herein.

60. Defendants have retaliated against Plaintiff on the basis of his opposition to discrimination, in violation of the NYSHRL, by subjecting Plaintiff to adverse actions because he complained about discrimination, including, *inter alia,* terminating his employment.

61. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which he is entitled to an award of monetary damages and other relief.

62. As a direct and proximate result of Respondents' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress for which he is entitled to an award of monetary damages and other relief.

63. Defendants' unlawful retaliatory conduct was intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights under the NYSHRL for which he is entitled to an award of punitive damages.

## THIRD CAUSE OF ACTION
### Discrimination in Violation of the NYCHRL
*Against All Defendants*

64. Plaintiff repeats each and every allegation in the preceding paragraphs as if set forth fully herein.

65. Defendants have discriminated against Plaintiff on the basis of his skin color, ethnicity and race in violation of the NYCHRL by subjecting Plaintiff to disparate treatment on the basis of his color, race and ethnicity, including, *inter alia*, subjecting him to a hostile work environment, demoting him, and failing to promote him.

66. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which he is entitled to an award of monetary damages and other relief.

67. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental

anguish and emotional distress for which he is entitled to an award of monetary damages and other relief.

68. Defendants' unlawful discriminatory conduct was intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights under the NYCHRL for which he is entitled to an award of punitive damages.

### FOURTH CAUSE OF ACTION
### Retaliation in Violation of the NYCHRL
*Against All Defendants*

69. Plaintiff repeats each and every allegation in the preceding paragraphs as if set forth fully herein.

70. Defendants have retaliated against Plaintiff on the basis of his opposition to discrimination, in violation of the NYCHRL, by subjecting Plaintiff to adverse actions because he complained about discrimination, including, *inter alia,* terminating his employment.

71. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which he is entitled to an award of monetary damages and other relief.

72. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress for which he is entitled to an award of monetary damages and other relief.

73. Defendants' unlawful retaliatory conduct was intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights under the NYSHRL for which he is entitled to an award of punitive damages.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

A. A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the State of New York and the City of New York;

B. An injunction and order permanently restraining Defendants and their partners, officers, owners, agents, successors, employees and/or representatives and any and all persons acting in concert with them, from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

C. An order directing Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

D. An award of damages against Defendants, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages;

E. An award of back pay for Defendants' violations of NYCHRL and NYSHRL;

F. An award of front pay for Defendants' violations of NYCHRL and NYSHRL;

G. An award of compensatory damages in an amount that would fully compensate Plaintiff, plus prejudgment interest, for the economic loss, mental anguish, emotional pain and suffering, in an amount to be determined at trial;

H. An award of punitive damages to Plaintiff in an amount that would punish Defendants for the excessive, extreme, willful, wanton, reckless, and negligent misconduct alleged in this Complaint that would effectively deter Defendants from future discrimination and other unlawful behavior, in an amount to be determined at trial;

I. An award of all penalties available under the applicable laws;

11

J.     Prejudgment interest on all amounts due;

K.     An award of costs that Plaintiff incurs in this action, as well as an award of reasonable attorneys' fees to the fullest extent permitted by law; and

L.     Such other and further relief as the Court may deem just and proper.

Dated:     New York, New York
October 4, 2021

Respectfully submitted,

**EISNER, DICTOR & LAMADRID, P.C.**

By: _____

Maria L. Chickedantz, Of Counsel
39 Broadway, Suite 1540
New York, NY 10006
Tel. (212) 473-8700
Fax: (212) 473-8705

maria@eisnerdictor.com

12